UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES

v.  405CR059

MARTIN J. BRADLEY III, et al.

## ORDER

## I. INTRODUCTION

In this criminal RICO case, the Court is asked to stay, pending appeal, the liquidation of various properties part-owned by defendants convicted and sentenced to some $70 million in fines, assessments, forfeitures and restitution. The wives of two defendants claim ownership interests in some real property. One argues that the Government should wait to collect until her husband's appeal is exhausted. *See* doc. # 908. The other insists that enough funds have already been (or are about to be) collected, thus obviating the need for further collection efforts. Doc. # 902 at 2 (sealed brief). And, she questions the Court's jurisdiction to act in light of pending appeals of this Court's prior Orders (one of which extended the Receivership's authority to continue liquidation). Doc. # 928.

## II. BACKGROUND

### A. Forfeiture and Receivership

This case arises from a prescription-drug-based fraud scheme. Doc. # 1; # 106 at 2. A jury convicted one corporate and three individual defendants: Bio-Med Plus, Inc. (Bio-Med), Martin J. Bradley, Jr., Martin J. Bradley, III, and Albert Tellechea. Doc. ## 738-41. Contemporaneous with the jury's 3/29/06 guilty verdict, the parties (except Tellechea) entered into a 4/3/06 Preliminary Consent Order of Forfeiture (doc. # 598) (Preliminary Forfeiture Order) and Order Appointing Receiver and Monitor (doc. # 599) (Receivership Order), under which they agreed to forfeit $39,500,000 to the Government, with the amount forfeited to be credited toward any restitution ordered by the Court at sentencing. Doc. # 598 at 3. The forfeiture judgment was "to be satisfied within one year from the [4/3/06] date of the [Preliminary Forfeiture Order] and the forfeiture judgment [would] not accumulate interest." Doc. # 598 at 3. These Consent Orders did not specify which defendant should pay what percentage of that $39.5 million. Nor did they identify any particular payment sequence (*e.g.*, from liquidated Bio-Med assets first, then from the individual defendants). Doc. ## 598, 599.

Nor -- quite understandably -- did those Orders contain anything that might be construed to interfere with this Court's authority to sentence the defendants. Doc. # 598 at 1-6; *see also* doc. # 926, exh. A at 5-6 (defense counsel's acknowledgment of this fact).

The Consent Order defendants (hence, the "Forfeiture Defendants" -- the Bradleys and Bio-Med) also agreed to the Court's appointment of a Receiver and Monitor to liquidate various assets (the largest being "certain portions of" Bio-Med) in order to satisfy the $39.5 million preliminary forfeiture judgment. Doc. # 599 at 1.

The Receivership Order authorized the Receiver to liquidate a variety of assets "without further order of the Court." Doc. # 599 at 11. In exchange for resolving the forfeiture issue without trial, the Bradleys received a carve-out

of various listed assets that would be exempt from the Receiver's plenary liquidation power (basically, property in which the Bradley wives claimed an interest, *see id.* at 11-13; *see also* doc. # 926, exh. A (Sentencing Tr.) at 17-18); doc. # 598 at 4 (Bio-Med's receivables and inventory liquidation carve-out for the wives).[1]

The Forfeiture Defendants also expressly agreed that (a) they would be jointly and severally liable on their individual forfeiture judgments, doc. # 598 at 2; and (b) "[t]he Receiver shall work with Defendants and other [Bio-Med] owners in order to establish a liquidation schedule which the Receiver and Monitor shall share with the Court, Counsel for the Defendants and government." Doc. # 598 at 3.

The Government could also, *in addition* to the $39.5 million forfeiture agreed upon, seize any assets later discovered that had not been disclosed during the negotiations leading up to the Receiver-appointment Order. Doc. # 599 at 13. The Bradley wives signed both jointly-presented Preliminary Forfeiture and Receivership Orders. *Id.* at 17; # 598 at 7.

In anticipation of sentencing, the Government moved to extend the Receiver's involvement post-judgment. Doc. # 730. It thus sought to use the Receiver and Monitor to collect not only the $39.5 million in forfeiture covered by the Preliminary Forfeiture Order, but *also* the monetary penalties (fines/assessments/restitution) imposed by this Court at sentencing.

*Id.* Bradley, Jr., joined by Norma, objected. Doc. ## 759, 761.

## B. Sentencing the Defendants

The Court sentenced the defendants before ruling on the Government's extension motion. It incorporated the Preliminary Forfeiture Order into its sentencing judgment. Doc. # 926, exh. A at 44. It also imposed fines and assessments against the Bradleys, who are Bio-Med's principal owners, Bio-Med, and Tellechea. Doc. # 740 at 9 (against Bradley III: a $5 million fine and a $24,700 assessment); # 739 at 6, 8 (against Bradley, Jr: a $1.5 million fine and a $400 assessment); # 741 at 5-7 (against BioMed: a $26.5 million fine and a $21,200 assessment); # 738 at 5 (against Tellechea: a $100,000 fine and a $100 assessment). In addition, the Court found restitution owing to the following entities in the following amounts:

- Florida Medicaid: $10,120,403.04 ($7,776,722.04 from what became known at trial as the "Florida Medicaid" scheme, plus $2,343,681 from the "IV Solutions" scheme);

- California Department of Health Services: $ 2,261,366.50;

- The Genetically Handicapped Persons Program: $ 10,423,486.33;

- Chico, California Centers for Medicare and Medicaid Services: $2,738,373.50;

- South Counties Employees/Employer Trust: $ 1,908,028.00; and

- Blue Shield California:

---

[1] The Preliminary Forfeiture Order thus recognized the "claims of Maria Bradley [Bradley III's wife] and Norma Bradley [Bradley Jr.'s wife] in Bio-Med Plus, Inc." Doc. # 598 at 4. The same-day-filed Receivership Order, in turn, expressly listed "exempt" assets in which Maria and Norma have claimed an interest. *Id.* at 11-13; *see also* doc. # 902 at 2; # 908 at 3-4.

2

$353,338.50.

The Court thus ordered total restitution of $27,804,995.89. It found that Bradley III and Bio-Med owed restitution to all of the above (hence, $27,804,995.89). Doc. # 741 at 5-6 (Bio-Med restitution accounting); doc. # 740 at 7-8 (Bradley III restitution accounting). It also found that Bradley Jr. owed restitution for all of the above except the "IV Solutions" scheme portion of Florida Medicaid's restitution. Doc. # 739 at 6-7 (total restitution $25,461,314.89, which equals the total restitution amount minus the "IV Solutions" scheme amount [$27,804,995.89 - $2,343,681.00 = $25,461,314.89]). Finally, the Court found that Tellechea owed restitution for only a portion of the "Florida Medicaid" scheme -- $3,294,077.00. Doc. # 738 at 5.

The total, "joint and several" restitution[2] award equals $27,804,995.89. The Preliminary Forfeiture Order states, as noted above, "that any amount tendered and forfeited shall be credited to the defendants as restitution." Doc. # 598 at 3. Thus, the entire restitution amount for all defendants will be satisfied by $39,500,000 in forfeiture payments.[3] If the Receiver realizes more than $39,500,000 from liquidating Bio-Med, then the next layer of proceeds pays Bio-Med's $21,200 assessment and $26.5 million fine; any proceeds beyond that would then go to Bio-Med's owners (two of whom, the Bradley defendants here, also owe substantial fines).

---

[2] *See, e.g.*, doc. # 738 at 6 "Joint and Several" option selected.

[3] While only the Bradley/Bio-Med defendants signed this Order, doc. # 598 at 7, and thus Tellechea did not, there can only be one restitution, so Tellechea benefits if the Bradley/Bio-Med defendants pay 100% restitution.

## C. Post-Conviction Receivership

After sentencing, the Government renewed its motion to extend the authority of the Court-appointed Monitor and Receiver over various Bradley assets in order to ensure payment of all monetary penalties. Doc. # 775. Bradley, Jr. objected. Doc. ## 784. The Court granted the motion and thus continued the Receiver's tenure post-conviction. Doc. ## 789, 790; *see also* doc. ## 806, 807, 809, 811, 812 (appeals of those Orders by Bradley Jr., Bradley III, Tellechea, Norma and Maria); ## 843, 845 (Bradley Jr. and his wife Norma moved for a stay pending appeal of further liquidations of assets Norma partly owns); # 858 (denied); # 863 (Norma's appeal of Order doc. # 858). By granting a subsequent extension motion, doc. # 895, the Receiver's tenure continues to 8/31/07. Doc. # 900. The Receivership-continuation Order:

> directed [the Receiver] not to seize or attempt to liquidate the assets that are identified as exempted from forfeiture under this Court's [Preliminary Forfeiture Order] *unless* the liquidation of all "non-exempt" assets fail[s] to satisfy the $39.5 million forfeiture judgment ordered in the [Preliminary Forfeiture Order], *and* the special assessments and fines imposed upon Defendants Bio-Med Plus, Inc., Martin J. Bradley III, Martin J. Bradley, Jr. and Albert Tellechea in their respective Judgment and Commitment Orders.

Doc. # 790 at 4-5 (emphasis added).

Thus, the Receiver was given the following marching orders:

(1) marshal and liquidate all non-exempt Bradley/Bio-Med assets first, then pursue

exempt assets (thus necessitating innocent-spouse asset sorting) to pay the Government $39,500,000 in forfeiture. (This satisfies the Government's forfeiture claim as well as the defendants' restitution liability, assuming the restitution principal plus interest is less than $39.5 million);[4]

(2) assuming any assets remain thereafter, *see* doc. # 902 at 2 n. 2, the Receiver shall sell each Bradley defendant's assets to pay his personal fine/assessment.

### D. Payment Sequences/Priorities

After selling the defendants' assets, how should the liquidation proceeds be applied? Which parts of the $70 million total forfeiture/sentencing obligation should be paid first, and by whom? These questions have been lurking around in the background of this case for months, and they drive much of the instant motion work before the Court. Hence, the Court will pause to address these questions before recapitulating the remainder of the factual/procedural background to this case.

The preprinted portion of each Judgment and Commitment Order (implementing this Court's sentences) specifies that each defendant's

> [p]ayments shall be applied in the following order: (1) assessment; (2) restitution principal; (3) restitution interest; (4) fine principal; (5) fine interest; (6) community restitution ; (7) penalties, and (8) costs, including cost of prosecution and court costs.

Doc. # 738 at 6; # 739 at 8, etc. As reflected in the sequence of the Court's directions to the Receiver, forfeiture precedes payment of any of the above because the government owns all forfeited wealth at the moment of conviction, *see, e.g., U.S. v. Bowe*, 404CR308 at 2 (S.D.Ga. 8/28/06) (unpublished) ("Title to forfeited property vests in the United States at the time a defendant commits his unlawful acts, although it attaches only upon his conviction"), so convicted defendants cannot use that same wealth to pay their fines, assessments, etc. Norma agrees. Doc. # 928 at 5 (the defendants should pay "restitution/forfeiture before fines"). As an aside, this Court did not order "community restitution" or "prosecution and court costs."

Here, then, the defendants' assets first pay the $39.5 million in forfeiture, then their assessments, then restitution (for which they get full credit to the extent they have paid the $39.5 million in forfeiture), then fine principal, followed by fine interest.

Bio-Med signed the Preliminary Forfeiture Order. Doc. # 598 at 7. Assuming that its liquidation yields, say, $45 million, $39.5 million of that would pay down the defendants' collective forfeiture obligation (thus Bio-Med's payment benefits the other defendants) but any excess ($45 million - $39.5 million = $5.5 million) would pay down Bio-Med's $26.5 million fine. There is no suggestion that Bio-Med's liquidation proceeds will exceed Bio-Med's total forfeiture/restitution/fine obligation ($39.5 million + $26.5 million = $66 million). So under a $45 million liquidation scenario, this would leave Bio-Med $21 million ($66 million -

---

[4] While no interest accrues on the forfeiture amount, doc. # 598 at 3, each Judgment specifies that "[t]he defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of judgment, pursuant to 19 U.S.C. § 3612(f)." *See, e.g.,* doc. # 740 at 7. No such payment was made by the fifteenth day, so interest accrues on the restitution and fine obligations.

$45 million = $21 million) short on paying its fine and any fine interest.

However, the forfeiture judgment is a joint and several obligation of Bio-Med *and* both Bradley defendants. Doc. # 598 at 2 ("[t]hese judgments are individual judgments and will not be joint and several, *except* as to Martin J. Bradley, Jr., Martin J. Bradley, III and Bio-Med Plus, Inc." (emphasis added)). Using Bio-Med's liquidation proceeds to pay down the $39.5 million forfeiture obligation benefits the Bradleys (and Tellechea, *see supra* n. 3) because, under this scenario, Bio-Med would pay 100% of their forfeiture judgment, but in the process render itself unable to pay the rest of its fine (*i.e.*, $21 million) plus any fine interest.

It is unclear to this Court if this hypothetical result is a possibility. *See* doc. # 902 at 1-2 (Norma insists that the Bio-Med and other liquidation proceeds will be sufficient to satisfy the forfeiture judgment); doc. # 895 at 2 ¶ 6 (Receiver's 3/22/07 motion to extend her receivership, noting that, as "result of [her liquidation] actions [as of 3/22/07], the amounts that the Receiver has on deposit, to date, would *not* be sufficient to pay the forfeiture amount") (emphasis added)); *see also* doc. # 926, exh. A (Sentencing Tr.) at 14-15, 19-20; # 913 at 2 n. 1 (Receiver's brief noting Bio-Med's 4/9/07 sale, but disclosing no price paid for it).

In any case suppose Bio-Med's liquidation in fact is sufficient to pay the entire forfeiture judgment. That obviously would relieve the Bradley defendants from paying their joint and several (with Bio-Med) forfeiture obligation, and correspondingly free up cash for them to pay down their individual fines. But Bio-Med, in the meantime would then default on its fine obligation because all of its cash will have been used to pay off 100% of the forfeiture judgment -- to the individual Bradley defendants' benefit.

That would not happen if all three Forfeiture Defendants contributed equally toward the $39.5 million forfeiture debt. And that, in turn, would ensure that Bio-Med would retain more of its cash to pay its fine. Conversely, it would increase the forfeiture burden on the two individual Bradley defendants, who thus would wind up with less cash to pay their own fines (a result, unsurprisingly, that Norma and Bradley Jr. have perceived as a possibility and thus oppose, doc. # 800 at 4 ¶ 8; # 929).

The Government asserts (doc. # 820 at 7-8) that the Consent Orders are silent on who should pay the forfeiture percentage-wise, and in what order. No specific provision states that 100% of Bio-Med's proceeds should be devoted first to pay 100% of the forfeiture judgment. The parties agreed only to separate carve-outs -- for the benefit of the Bradley wives -- regarding ownership of Bio-Med's asset-liquidation proceeds. *See* doc. ## 598, 599; *see also* doc. # 926, exh. A at 30-36 (Sentencing hearing colloquy reviewing these features). They reached that agreement in the only portion of the case where they were legally able to do so -- in the forfeiture phase -- and not with respect to the sentencing phase (which falls exclusively within the province of the Court).

Norma and Bradley Jr. thus argue that, under the Preliminary Forfeiture Order (doc. # 598), 100% of Bio-Med's liquidation proceeds must be devoted first to the payment of *all three* defendants' forfeiture obligations. Doc. # 929 at 4; # 800 at 4 ¶ 8. Yet, they point to no specific provision(s) of doc. # 598 to support that result. And while imposing Bio-Med's sentence, this Court emphasized that it does not "see any innocent victims here. The [Bradley] family has lived quite well over ill-gotten gains.

And they've lived in a luxurious fashion. They have benefitted significantly...." Doc. # 926, exh. A at 37.

Nor does the fact that restitution is a criminal penalty (as Bradley Jr. points out, doc. # 929 at 2, citing *U.S. v. Siegel*, 153 F.3d 1256, 1259 (11th Cir. 1998)) alter this analysis. The Court agreed, when it signed the Consent Orders, that all forfeiture payments would be credited against any subsequent restitution obligations. It did not then direct which defendant should pay forfeiture/restitution obligation sequence-wise and percentage-wise, and it approved no consent order to that effect.

The controlling portion of the Consent Orders was outlined above: "The Receiver shall work with Defendants and other [Bio-Med] owners in order to establish a liquidation schedule which the Receiver and Monitor shall share with the Court, Counsel for the Defendants and government." Doc. # 598 at 3. The Court therefore directs the Receiver to craft the liquidation schedule such that (1) Martin J. Bradley III's non-exempt individual assets satisfy one-third of the $39.5 million forfeiture judgment, (2) Martin J. Bradley Jr.'s non-exempt individual assets satisfy one-third of the $39.5 million forfeiture judgment, and (3) the proceeds from Bio-Med's sale satisfy one-third of the $39.5 million forfeiture judgment. Bio-Med proceeds may be used to satisfy more than one-third of the forfeiture if Bradley III or Bradley Jr. cannot cover their assigned one-third by the sale of non-exempt assets.

### E. Additional Considerations

To restate the Receiver's marching orders, and now taking Part II(D) *supra* into account:

(1) she must marshal and liquidate all non-exempt Bradley/Bio-Med assets first, and apply each of the three defendants' assets to pay, for each defendant, one-third of the $39.5 million forfeiture judgment;

(2) if all three defendants' non-exempt assets are exhausted, she shall then proceed to liquidate the exempt assets (with the Court's permission) until the entire forfeiture judgment is paid; and

(3) assuming any assets remain thereafter, *see* doc. # 902 at 2 n. 2., she will then sell each Bradley defendant's assets to pay his personal fine/assessment.

Some additional considerations must be recognized regarding step 3. First, by this stage (*i.e.*, the forfeiture judgment is paid off and excess funds exist), the Receiver no longer enjoys the plenary authority flowing from the consent orders (doc. ## 598, 599), so any asset sales must first be Court-approved.

Second, each defendant decides which among his marshaled assets will be sold to satisfy his personal fine and assessment. Third, assets claimed as "exempt" in the Consent Orders now retain no special status, and can be liquidated to satisfy the fine/assessment unless other assets remain. Note, however, that until the Receiver liquidates $39.5 million in assets, the Consent Orders apply, and the "exempt" assets are thus protected against involuntary liquidation.

### F. Norma's Ancillary Hearing Petition

After the Court extended the Receiver's authority, Norma Bradley petitioned for an ancillary hearing, doc. # 800, and this Court denied it based on her agreement to be bound by

the Preliminary Forfeiture Order.⁵ Doc. # 858; see also # 863 (Norma appealed that Order).

### G. The Receiver's Motions

Meanwhile, the Receiver has marshaled various assets for liquidation, and now moves:

(a) for an Order granting leave to dispose of non-pedigree and expired inventory, doc. # 875 (the Court denied this motion without prejudice, doc. # 903 at 8; the Receiver renewed her motion, doc. # 913; the Government filed a supporting brief, doc. # 915; *see also* doc. # 926 (Maria's Reply); the Court addresses this in a separate Order);

(b) for approval of terms of sale for real property, etc., doc. # 890 (the Court granted this motion, *see* doc. # 903 at 8);

(c) for approval of terms of sale for other real property, etc., doc. ## 898, 899.⁶

Maria opposes motions ## 898 and 899 (doc. # 899 is now moot, *see supra* n. 6) by moving to stay these sales pending the appeals of the Bradley and Bio-Med defendants. Doc. # 908; # 924. Norma, meanwhile, opposed the Receiver's motion (# 895, since granted by this Court, # 900) to extend the Receiver's tenure.

Doc. # 902. To the extent that filing represents a motion, it is denied.

Finding Maria's "stay" arguments (doc. # 908) comprehensive and technical,⁷ the Court welcomed a Reply Brief from the Receiver. Doc. # 909. It also welcomed a Reply Brief on Norma's implied motion (doc. # 902) to terminate the Receiver's tenure. Doc. # 906; *see also* doc. ## 922, 924. The Receiver replied. Doc. ## 912, 920. Norma and Bradley Jr. have each have replied to that, doc. ## 928, 929, and the Court grants Bradley III's motion (doc. # 932) to adopt Bradley Jr.'s brief (doc. # 929).

### III. ANALYSIS

#### A. Receiver's Motion To Defer

The Receiver argues that:

(a) Pursuant to Orders ## 598, 599 and 790, all of the property of Norma Bradley and Martin J. Bradley, Jr. that was disclosed to the Government is subject to forfeiture, except for that property listed as exempt, to satisfy the $39.5 million Forfeiture Amount. Doc. # 912 at 2.

(b) Any undisclosed assets are also subject to forfeiture, in addition to the $39.5 million Forfeiture Amount. *Id.*⁸

---

⁵ The Receiver correctly argues (doc. # 920 at 6) that (a) this same reasoning applies to both Norma and Maria, who both signed that Consent Order; and (b) the only property in which Maria now retains an interest is the exempt property specified in the Receivership Order (doc. # 599 at 11-12) that accompanies the Preliminary Forfeiture Order, doc. # 598.

⁶ Because of a third-party buyer's contract cancellation, the Receiver has since moved to withdraw motion # 899. Doc. # 914. That motion is granted.

⁷ The Court has waded into this general area before. *See* doc. # 857.

⁸ This is correct. The Receivership Order specifies that

> [t]o the extent that assets are discovered or identified which have not been identified to the government in the course [of] negotiations related to this order, the government is free to pursue at its discretion those newly

7

(c) This Court implicitly recognized that its forfeiture judgment might not be satisfied until after the payment of fines and assessments, and that the assets which were exempt from *forfeiture* might still be liquidated to satisfy those fines and assessments. *Id.* at 3.

(d) the very arguments asserted by Norma in doc. # 902 -- (1) that the $39.5 million Forfeiture Amount should be satisfied first and from the proceeds of the sale of Bio-Med's assets, and (2) that the Receiver should therefore cease liquidating non-exempt assets in which Norma asserts an interest (including a home known as "22 Wright's Pointe") -- have already been resolved against her by the Court's 12/19/06 Order (doc. # 858). *Id.* at 5.[9]

(e) The Court has entered various judgments for forfeiture, restitution, fines and assessments in excess of $70 million in total. Some portion of this total is the joint and several responsibility of the Forfeiture Defendants and some portion is the responsibility of individual defendants. The fines imposed against the Forfeiture Defendants are accruing interest, while the forfeiture judgment is not. *Id.* at 5-6.

(f) Further complicating this picture is the fact that inter-company adjustments must be made between various entities that may be owned or owned in part by various combinations of the Forfeiture Defendants and/or one or both of Maria Bradley and Norma Bradley and, in some cases, third parties. Some of these entities may also have third party creditors. *Id.* at 6.

(g) Therefore, the Receiver is in the process of preparing a comprehensive liquidation plan to present to the Court, so that an informed judgment can be made about applying the available proceeds toward satisfaction of the liabilities for fines, forfeiture, restitution and other creditors of the various defendants. *Id.*

The Receiver thus moves the Court to defer any decision concerning the application of proceeds to satisfy any such liabilities until such time as a comprehensive liquidation plan can be presented. *Id.* at 6.

The Court generally concurs with the Receiver. The parties cut a deal with respect to what assets could be subject to forfeiture. No such limitation exists for the Court's assessments, fines and restitution -- the *sentencing* in this case. *See* doc. # 926, exh. A (Sentencing Tr.) at 5-6.

After forfeiture, however, if the defendants have sufficient assets to satisfy their fines and assessments (again, restitution will likely be satisfied by forfeiture), they must be allowed to decide which assets to sell to pay their debt. Only when they fail to pay their debt can the Government step in and seize property -- normally under general judgment-enforcement mechanisms -- but here through the Receiver's authority as extended by this Court post-conviction. Doc. # 790.

---

discovered assets in addition to the $39,500,000 judgment entered in the Preliminary Order of Forfeiture.

Doc. # 599 at 13.

[9] Actually, the Court did not expressly reach the payment-priority issue then. *See*, however Part II(D) *supra*.

8

The Receiver's argument (c) is incorrect insofar as it contemplates fines and assessments being paid before the forfeiture is satisfied; the forfeiture precedes all other payments. *See supra* Part II(D). She also is incorrect insofar as she contemplates the sale of forfeiture-exempt assets before non-exempt assets are depleted. Nevertheless, the Court agrees that she should be given time to present to the Court an orderly liquidation plan, with payments structured in accordance with Part II(D) *supra*.

### B. Maria Bradley's Stay Motion

Maria Bradley argues that the Court nevertheless should stay the sale of certain non-exempt real property because it is unique and thus not restorable should the Court's judgment be reversed on appeal. Doc. # 908. She cites the stay provisions of the forfeiture statutes, but F.R.Cr.P. 38(d) is the more appropriate rule to apply. *See* 9B FED. PROC., L. ED. § 22:2304 (June 2006); *U.S. v. Hill*, 167 F.3d 1055, 1074 (6th Cir. 1999); F.R.Cr.P. 38(f) ("A stay of a forfeiture order is governed by Rule 32.2(d)")[10];

*U.S. v. Riedl*, 214 F.Supp.2d 1079, 1082 (D.Hawaii 2001) (factors considered to determine appropriateness of staying forfeiture order pending appeal include: (1) likelihood of success on appeal, (2) whether forfeited asset will likely depreciate over time, (3) forfeited asset's intrinsic value to defendant, and (4) expense of maintaining forfeited property).

Unsurprisingly, case-specific circumstances alter outcomes in this area of law. *See, e.g., Riedl*, 214 F.Supp.2d at 1083 (defendant was not entitled to stay of forfeiture of nine commercial properties which jury found were involved in money laundering offenses for which defendant was convicted pending appeal; it was unlikely that defendant would prevail on appeal, leasehold interests continued to decline in value with passage of time, defendant would not suffer irreparable harm absent stay, since none of the properties served as defendant's primary residence, and defendant failed to demonstrate that any of the properties was special or irreplaceable, and granting stay would have increased burden on Marshal's Service, which would have had to maintain and manage properties); *U.S. v. Houghton*, 132 Fed.Appx. 130, 132 (9th Cir. 2005) (stay of forfeiture proceedings regarding property used to commit child pornography offenses was not required during pendency of defendant's direct appeal of his conviction); *U.S. v. Neal*, 2003 WL 24307070 at * 6 n. 5 (E.D.Va. 9/29/03) (unpublished) ("Defendants argue under Rule 32.2(d) that the Court should allow a stay of the forfeiture order pending appeal. The Court

---

[10] F.R.Cr.P. 32.2(d) provides:

> If a defendant appeals from a conviction or an order of forfeiture, the court may stay the order of forfeiture on terms appropriate to ensure that the property remains available pending appellate review. A stay does not delay the ancillary proceeding or the determination of a third party's rights or interests. If the court rules in favor of any third party while an appeal is pending, the court may amend the order of forfeiture but must not transfer any property interest to a third party until the decision on appeal becomes final, unless the defendant consents in writing or on the record.

*Id.* Relatedly, Rule 32(e) ("Subsequently Located Property; Substitute Property") authorizes the Court, upon the government's motion, to "enter an order of forfeiture or amend an existing order of forfeiture to include property that: (A) is subject to forfeiture under an existing order of forfeiture but was located and identified after that order was entered; or (B) is substitute property that qualifies for forfeiture under an applicable statute." *Id.*

rejects this request, finding compelling needs for the Government to seize and manage the assets immediately").

Here the only real factor that rises to significance would be the "intrinsic value" of a personal residence to a defendant's *wife*. That factor is magnified where a defendant's wife is *not* convicted of any crime, jointly owns a residence with her convicted husband, lives in it, and non-ill-gotten funds figure into the residence's value. Maria, however, specifies no special or intrinsic value in any of the real estate properties she lists in her brief. Doc. # 908 at 3. The mere fact that she and her husband injected sentimentality into the name of the company under which two properties are held, *see id.* at 3 n. 5, does not carry the day here.

Nor is there any suggestion that the Government would not be able to fully compensate the defendants in the unlikely event that the liquidation-supporting convictions are reversed. *See* doc. # 919 at 9 (Eleventh Circuit's Order denying Bradley Jr.'s "Motion to Stay Collection" pending appeal); doc. # 858 at 3 ("The Government is more than capable of returning [Bradley Jr.'s] assets (or dollar equivalent) to him in the unlikely event of an appellate reversal and ultimate exoneration").

Finally, Maria has failed to show that the Receiver will liquidate more than $39,500,000 *plus* the fines/assessments of the individual defendants any time soon, so the Court overrules her objection (doc. # 908) to the continuation of the Receiver's tenure. This result moots the Government's otherwise flawed argument that at this juncture Maria lacks standing (she has standing so long as anything she owns is subject to "liquidation risk"). Doc. # 919 at 2.

### C. "Appellate Jurisdiction"

Citing her appeal of this Court's Order denying her ancillary petition, Norma argues that this Court lacks jurisdiction to entertain the Receiver's request (already granted) to extend her tenure in order complete her liquidation mission. Doc. # 928 at 2 (citing *U.S. v. Tovar-Rico*, 61 F.3d 1529, 1532 (11th Cir. 1995)).

It is true that a notice of appeal typically divests a district court of jurisdiction over matters raised on appeal, but this general rule does not apply to collateral matters not affecting questions presented on appeal. *Mahone v. Ray*, 326 F.3d 1176 (11th Cir. 2003). Nor does it prevent a district court from taking action in furtherance of an appeal. *Id.*; *see also* A.Ides, *The Authority of a Federal District Court to Proceed After Notice of Appeal Has Been Filed*, 143 F.R.D. 307, 308-09 (1992).

Here three rulings are challenged on appeal: (1) the Court's extension of the Receivership into the post-conviction phase; (2) the Court's denial of Norma's ancillary petition; and (3) the Court's denial of Norma's stay motion. *See supra* Part II (C). At this juncture the Receiver seeks only to submit a comprehensive liquidation *plan*. That plan, in turn, may moot one or more issues on appeal. For example, the plan must comply with the Court's sentence clarification as set forth in Part II(D) *supra*. That may just show that Bio-Med's liquidation proceeds are 100% consumed by Bio-Med's forfeiture/restitution/fine obligations. That, in turn, might moot arguments over distribution of any Bio-Med liquidation surplus. And that, in turn, may moot any arguments over what Bradley-wives' assets the Receiver may pursue.

The Court thus sees no jurisdictional conflict with reaching (and, for that matter, granting) the

Receiver's motion. *See also* doc. # 919 at 9 (Eleventh Circuit's Order denying Bradley Jr.'s "Motion to Stay Collection" pending appeal). This issue may be reexamined after the Receiver submits her revised liquidation plan.

### D. Sealed Records

Finally, all parties are directed to review the sealed documents in the record. Two were sealed to enable the orderly liquidation of Bio-Med. Doc. ## 902, 905. Others were sealed to facilitate prosecution, protect fair trial rights, etc. *See, e.g.,* doc. ## 106, 143, 152. Now that the trial has occurred and Bio-Med has been sold, the Court should be shown (via briefs to be filed within 15 days of the date this Order is served) why it should not unseal all sealed record documents. *See Romero v. Drummond Co., Inc.,* 480 F.3d 1234, 1245-46 (11th Cir. 2007); *U.S. v. Ochoa,* 428 F.3d 1015, 1028-29 (11th Cir. 2005). Failure to respond shall indicate no opposition to any unsealing.

### IV. CONCLUSION

Accordingly, the Court ***GRANTS*** the Receiver's motion (doc. # 914) to withdraw motion # 899. The Clerk shall remove # 899 from the Court's "Pending Motions" report. Correspondingly, the Court ***DENIES*** that portion (as moot) of Maria Bradley's motion (doc. # 908) opposing the sale contemplated by doc. # 899. The remainder of Maria's motion (doc. # 908) is ***DENIED*** on the merits. Norma Bradley's objection (doc. # 902, # 928) to the continuation of the receivership is overruled and, to the extent that it can be construed as a motion, it is ***DENIED***.

Next, the Court ***GRANTS*** Martin J. Bradley III's motion (doc. # 932) to adopt Martin J. Bradley Jr.'s brief (doc. # 929). The Court also ***GRANTS*** the Receiver's motion (doc. # 912 at 6) to defer any decision concerning the application of proceeds the Receiver collects (to satisfy the "joint and several" liabilities discussed above) until such time as a comprehensive liquidation plan can be presented to this Court. In that respect, she shall conform her plan with the directions set forth in Part II(D) *supra*.

Finally, all parties are directed to review the sealed documents in the record and notify the Court what, if any documents, should remain sealed and why. *See supra* Part III(D).

This 17 day of May, 2007.

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA