UNITED STATES

v.                405CR059

MARTIN J. BRADLEY, III, et al.

## ORDER

### I. INTRODUCTION

This Order follows *U.S. v. Bradley*, 2008 WL 228064 (S.D.Ga. 1/25/08) (unpublished), familiarity with which is assumed here. There the Court endeavored to tie up the loose ends in this case while acknowledging the existence of an ongoing third-party claims resolution process against defendant Bio-Med Plus, Inc. *See id.* at * 4 n. 4, 15. That process contemplated objections; five have been filed. Doc. ## 1113-15, 1117. The Receiver also moves, unopposed, to confirm the sale of real property located at 4 Mall Court, Savannah, Georgia. Doc. # 1128.

### II. BACKGROUND

The Receiver's mission here has been to liquidate the *Bradley* defendants' assets to satisfy their criminal sentencing and forfeiture obligations. *See* doc. ## 599, 790. To that end, she has been liquidating Bio-Med Plus, Inc. (Bio-Med), and thus has had to address all third party claims against it. She therefore set up a third-party claims resolution process and has since filed a motion to resolve those claims. Doc. # 1110. Her motion warned those notified that she "may seek to reduce or disallow your claim," so all claimants were advised to "read the motion carefully to identify which claim is objected to and the recommended disposition of your claim." *Id.* at 1. Written submissions were required by a published deadline. *Id.* at 1.

The Receiver then examined 15 Proofs of Claims and "communicated with many of the claimants to determine which Proofs of Claims should be allowed, reduced, and disallowed. In addition, pursuant to the notice requirements of the claims process, [she] notified certain claimants in writing of [her] decision to recommend that their Proof of Claim be reduced or disallowed." *Id.* at 4.

The Receiver next advised this Court to disallow the Texas Comptroller of Public Accounts' $5,585.77 Proof of Claim. *Id.* at 5. She did likewise for Richman Greer, P.A.'s $14,000 claim, and Edwin Rivera's $335,682.40 claim, as well as the $21,000 claim of David Oscar Markus, PLLC, for his legal representation of Rivera in this case. Finally, she recommends that Health Coalition, Inc.'s (HCI's) unliquidated claim be denied outright. *Id.* at 4, 8-10. As noted *supra*, all five claimants now object. Doc. ## 1113-15, 1117. The Court therefore must now decide whether to approve the Receiver's recommended disposition of these claims. Doc. # 1110.

### III. ANALYSIS

#### A. HCI

The Receiver provides some detail behind HCI's claim, which is based on a Florida state court lawsuit

> instituted by HCI in 1996 against Bradley III and others based on an alleged breach of his employment agreement with HCI. Bio-Med was added as a party defendant in 1999. HCI sued Bio-Med for: (a) an injunction to enjoin Bio-Med from soliciting, using, and disclosing HCI's customers and directing Bio-Med to return HCI's alleged trade secrets and customer lists to HCI; (b) liquidated damages pursuant to the Employment Agreement between Bradley III and HCI; (c) compensatory damages, attorneys' fees and interest or, in the alternative, a

reasonable royalty, pursuant to Sections 688 .003-688.005, Florida Statutes; and (d) and monetary damages pursuant to Section 688.004, Florida Statutes. The Circuit Court has not adjudicated Bio-Med's liability to HCI. In fact, the only entries on the Circuit Court docket during 2006 and 2007 are motions for status conferences.

Doc. # 1110 at 9.

HCI thus holds an unliquidated claim against Bio-Med and others. And HCI concedes it cannot collect anything from Bio-Med, through the Receiver's claims process, until it liquidates its claim down to a judgment against, among others, Bio-Med.

Meanwhile, the Receiver reasons, nothing prevented HCI from proceeding with that litigation. And some time ago this Court, she reminds, properly denied HCI's motion to intervene here because it failed to comply with federal forfeiture provisions. *Id.* at 10. The contingency of HCI's claim has not changed in all of this time, she continues, so this Court should now simply disallow HCI's claim outright. *Id.*

Calling the Receiver's recommendation groundless, HCI insists its claim is valid, but the Court should withhold decision until it is determined whether there are any Bio-Med assets to be distributed, then work out a practical solution here. Doc. # 1117 at 2-3. HCI properly points out that the Claims Order beckoned *unliquidated* claims. *Id.* at 3; *see also* doc. # 1110 at 3 ("Pursuant to the Claims Process Order, anyone with a present or *future* claim against Bio-Med must have presented it to the Receiver on or before December 28, 2007") (emphasis added); # 1076 at 2 ("All creditors of Bio-Med that hold claims or demands against Bio-Med, whether they are due now or anytime in the future, contingent or *unliquidated*....") (emphasis added).

HCI complains that it will be very costly to litigate its claims against Bio-Med and Bradley III, and that it would punish the wronged (HCI) and reward the alleged wrongdoers if it is forced to incur that expense now, in order to liquidate its claims, only to later find out that it was drilling a dry hole (*i.e.*, there are no Bio-Med/Bradley III assets left to pay any judgment it obtains).

Adding insult to injury, HCI continues, the Receiver would have HCI's claim against Maria Bradley denied without prejudice.[1] Doc. # 1117 at 3-4. HCI thus moves this Court to stay the determination of its claim. *Id.* at 4. It seeks oral argument (which is denied; this matter is straightforward enough) and also a directive to the parties to attempt mediation to avoid a waste of litigation resources. *Id.*

The Receiver says that HCI's interest in recovering money for itself is simply not her concern, and her job is to efficiently liquidate the Bradley/Bio-Med defendants' assets so that she can wind up her Receivership, which itself costs a lot to maintain. HCI's welfare, in turn, cannot be her concern, and it is no different than myriad other litigants faced with generic uncollectability issues. So, she concludes, HCI must bite the litigation bullet at its own expense and risk judgment uncollectability:

> HCI should not be permitted to collect from any receivership assets without evidence of a collectable interest in such assets or to use the Court's jurisdiction to

---

[1] The Court does not construe the Receiver's motion to by any stretch seek that result, so this argument is rejected outright.

2

circumvent the procedural mandates to obtain such an interest.

Doc. # 1129 at 7.

The Receiver reminds the Court that its "Wind Down Order" (doc. # 790) did not authorize the payment of contingent debts, so granting HCI relief now would in effect give its claim priority over the United States, which is the ultimate beneficiary of the Receivership Estate. Doc. # 1129 at 7.[2] Since nothing *legally* (*i.e.*, nothing beyond HCI's own economic self-interest) prevented HCI from litigating its claim, this Court should decline jurisdiction to resolve any part of it. *Id.* at 10.

Out of precaution, the Receiver requests leave from this Court for her to petition the Florida court to intervene in HCI's action so that she can move that court for a stay pending the Receiver's discharge under this Court's appointment orders. *Id.* She is concerned that HCI could decide to press its case forward on the merits, then obtain a default judgment against Bio-Med. "Disposition of the [HCI] Lawsuit will clearly impede the Receiver's obligation to protect and preserve receivership assets," she insists. *Id.* at 12.

The Receiver is correct. She is duty-bound to efficiently recover and distribute to the United States the defendants' assets, including Bio-Med's. She cannot be responsible for third-parties' litigation interests, only those of the Receivership Estate's. For the reasons staated here and in Part II(B) *infra*, the Court grants her motion on this claim, and it will address her intervention request in the next section.

---

[2] The Receiver, however, cites no specific wording to support her interpretation of Order # 790, which is a general, receivership-powers Order. For that matter, the Court discerns no provision barring unliquidated claims.

## B. Richman Greer, P.A.

The Receiver reasons that Richman Greer, P.A. (RG) seeks to retain some $14,000[3] for future legal fees and costs the law firm believes it may incur to defend Bio-Med in the [above-detailed, HCI] Lawsuit. [RG] was retained by Bio-Med prior to the Receiver's appointment and presently holds $14,000 in trust on behalf of Bio-Med. As a result of the procedural posture of the Lawsuit, the Receiver believes that any estimation of future legal fees and costs to defend Bio-Med is impracticable. Therefore the Receiver recommends that the Court disallow the Proof of Claim in its entirety.

Doc. # 1110 at 13. RG responds that

1) [RG's] legal fees will exhaust the amount presently held, and 2) the funds claimed in the Proof of Claim were paid to RG on behalf of three individuals [*i.e.*, Martin J. Bradley, III, Martin J. Bradley, Jr., and Maria Bradley (hereafter, the Bradleys)], in addition to Bio-Med Plus and thus the Receiver has no right to lay claim to those fees.

Doc. # 1115 at 1.

Since 2004, RG has represented Bio-Med and the Bradleys in the HCI litigation. RG

---

[3] It is obvious that the Receiver is using a process that *invites* claims to also reach out and *claim against* others (*i.e.*, she communicates that money or loans in the possession of others are subject to reclamation, then awaits for those affected to object by filing a claim for it here, after which she then insists that it belongs to the Receivership Estate). No one has objected to this use of the claims process.

3

is intimately familiar with the proceedings in that case and recently advised Receiver's counsel that while the case has been inactive and dormant for all intents and purposes since approximately late 2005, should HCI revive the litigation, attorney's fees and costs will be incurred far in excess of the claim amount. RG presently holds $13,998.00 in its trust account, the balance of the initial retainer paid to the law firm on behalf of Bio-Med Plus, Martin J. Bradley, III, Martin J. Bradley, Jr., and Maria Bradley, from which RG retains the right to pay itself in representation of these parties in the Florida case. Without these funds, it is likely that RG will be forced to withdraw as counsel for these parties. These parties maintain counterclaims against the plaintiff, HCI in the Florida action. HCI apparently refuses to dismiss the Florida action due to its claim herein which arises from the Florida litigation.

*Id.* at 2 (footnote omitted).

RG emphasizes that its Proof of Claim "involves funds paid to RG on behalf of Maria Bradley as well, who is not subject to this Receivership and therefore the Receiver's Motion should be denied on that ground alone." *Id.* at 2. Plus, "the Receiver moves to approve the disposition of claims for Bio-Med Plus, yet the retainer funds held by RG were also paid on behalf of Martin J. Bradley, III and Martin J. Bradley." *Id.* So the Receiver has failed to show that the funds held by RG are assets of Bio-Med Plus. *Id.* RG complains that the

> Receiver's unilateral conclusion that any "estimation" of future fees and costs is "impracticable" is not accurate. What is accurate is that the Receiver is wasting these funds by burdening this Court and the undersigned with unnecessary motions. There is no justification why RG's claim should be disallowed.

*Id.* at 3.

The Receiver points to RG's assertions in pressing her quest for leave from this Court to intervene in the HCI litigation. Specifically, she cites RG's

> engagement letter between the Forfeiture Defendants and Maria Bradley, [showing that] RG is co-counsel for the Forfeiture Defendants and Maria Bradley, along with [other] attorneys.... Neither RG nor those attorneys have been retained by the Receiver, and [the other lawyers] have not contacted the Receiver regarding their representations of the Forfeiture Defendants or returned the Receiver's telephone calls regarding the same. Thus, Bio-Med (and possibly the Bradleys) would be left without counsel to defend [against] the [HCI] Lawsuit.

Doc. # 1129 at 12. Again, the Receiver reminds, the HCI lawsuit thus could result in a judgment against Bio-Med and, in turn, deplete the Receivership Estate before this Court. *Id.*

The Court again agrees with the Receiver. It thus grants the Receiver leave to intervene in the HCI litigation. And since RG's claim obviously rides on what HCI does, it is worth pausing to return to HCI's claim: It may be true that, at the end of the day, there just may not be any assets for HCI to recover. In that sense, then, it would be wasteful for HCI to press its claims in light of the apparently high uncollectability risk.

Yet, the United States is losing money every day that the Receivership continues, and neither

4

it nor the Receiver owe any legal duty to third-parties who wish to sue on a given claim and thus deplete the very estate that is being liquidated for the Government's benefit. While the Court is not unsympathetic to HCI's plight, HCI's position is little different than that of plenty of other litigants who must make difficult choices to litigate or abandon potential "dry-hole" claims. RG, in turn, has even less cause to hold onto what is simply a "retainer-fee interest" that rests on what HCI does with its claim.

For that matter, RG has made no credible showing that it retains ownership of the $14,000, which is traceable to, at least in part, the Bradley defendants. At most it is a *retainer* (hence, a cash deposit in a law firm against *potential* attorney fees earned against it). And, while RG claims that *part* of the $14,000 came from Maria Bradley, it does not trace any particular amount to her. Meanwhile, it seems clear that at least part of the $14,000 was simply transferred to RG by the Bradley defendants, so now it is simply a pool of cash belonging to the Receiver Estate here, just like any other asset.

The Receiver shall therefore demand recovery from RG of the non-Maria Bradley amount of it. And if, in the Receiver's reasoned judgment, a default judgment in the HCI case could reasonably consume part of the Receivership Estate here, then she also is free to intervene there (nothing here prevents her from employing RG if, litigation-knowledge-wise, it is more efficient to do so). The same reasoning applies to any viable HCI litigation counterclaims held by any defendant here; if they have any value and also constitute an asset of the Receivership Estate, then the Receiver shall determine whether to pursue or abandon them accordingly.

Accordingly, the Receiver's motion to disallow the HCI and RG claims is granted, as is her motion for leave to intervene.

## C. Texas's Claim

Texas basically advances a franchise tax claim. Doc. # 1115 at 2. It explains that

> [p]ursuant to [Texas Tax Code] § 171.151(3), the annual franchise tax privilege period runs from [1/1 - 12/31] of each year. The franchise tax is incurred on [1/1] and is calculated under § 171.002, based on business done by the corporation during the year before the year in which the tax and the tax report are due. *See* TEX. TAX CODE §§ 171.153(c) and 171.1532(b). Therefore, Bio-Med's 2007 franchise tax covers the privilege period from January 1 through December 31, 2007 and is based on the business done by Bio-Med during *2006*.

*Id.* (emphasis added). The dispute here arises from the fact that the Receiver previously paid Texas $6,740, which she says was applied to Bio-Med's 2007 franchise tax liability. Here the briefing suffers from a lack of clarity, but the Receiver seems to be arguing that, because Bio-Med leased a distribution center in Texas that had been closed for all of 2006, the 2007 tax claim should be disallowed. Doc. # 1133 at 9. Texas seems to be saying that, because Bio-Med did business through 4/9/07, Texas is owed the full amount of the 2007 franchise tax. *Id.* at 3. There is, the state explains, no proration permitted under Texas law. *Id.*

The Receiver represents, meanwhile, that she is endeavoring to informally resolve this claim and contemplates a joint-approval motion downwind. Doc. # 1133 at 9. The Court encourages informal settlement. It therefore will sustain Texas's objection for now, and to

5

that extent deny the Receiver's motion # 1110 without prejudice.

**D. Rivera and Marcus**

Former *Bradley* defendant Edwin Rivera submitted a Proof of Claim while simultaneously disclaiming the Court's jurisdiction over him personally. His Proof of Claim is for Bio-Med's indemnification of his defense costs. That indemnification operated by way of two promissory notes Rivera gave to Bio-Med for its $335,682.40 loan to him to finance his legal defense costs in this case. To secure the loans, Rivera gave Bio-Med mortgages on his real property.

Prior to the Court's entry of *Bradley*, 2008 WL 228064 (doc. # 1108), the Receiver moved the Court to disallow Rivera's claim. Doc. # 925 at 4. The Receiver contended that Rivera is not entitled to indemnification for his legal defense costs pursuant to Florida Statute § 607.0850 and Bio-Med's By-Laws because he was not a director, officer , employee or agent of Bio-Med. *Id.* This Court, however, ruled that it does not have personal jurisdiction over Rivera. Doc. # 1108 at 15.

In response to that ruling, the Receiver recommended that the Court disallow his Proof of Claim in its entirety without prejudice to Rivera (and thus, Marcus) to assert his claim, once liquidated, in this Court. Doc. # 1110 at 5, 11-12. Nevertheless Rivera and Marcus have since filed their Proof of Claim here. Doc. # 1113 at 1 ("Edwin Rivera should not be required to pay back the attorney's fees expended in this case. In addition, for the reasons set forth in the Court's [*Bradley*] order, the Court does not have jurisdiction to take the Receiver's recommended action on Mr. Rivera's claim. In an abundance of caution, we preserve the claim through this pleading"); *id.* at 1-2 ("Bio-Med still owes David Oscar Markus PLLC the sum of $21,000.00 for his representation of Rivera at the criminal trial. Undersigned counsel was willing to settle for approximately $8,500.00 that remains in his trust account (from the original trial) but the Receiver was unwilling to settle, necessitating this claim. And for the reasons set forth in this Court's [*Bradley*] Order, this Court does not have jurisdiction to take the Receiver's recommended action on this claim. In an abundance of caution, we preserve the claim through this pleading").

The Receiver now points to that filing (*i.e.*, doc. # 1113) in contending that Rivera now consents to this Court's jurisdiction -- by persisting in pressing his claim here. Doc. # 1133 at 6 (citing *In re Ford Motor Co.*, 471 F.3d 1233, 1248 (11th Cir. 2006) (to intervene is to consent) and rejecting *S.E.C. v. Ross*, 504 F.3d 1130, 1148-50 (9th Cir. 2007) (to intervene is *not* to consent where one *must* intervene to preserve claims or defenses but otherwise stands on one's non-consent to jurisdiction)). Rivera has not responded to this contention.

In *Bradley*, this Court comprehensively explored the Receiver's failure to establish *in personam* jurisdiction over Rivera. *Bradley*, 2008 WL 228064 at * 8-14. It is thus understandable that the Receiver would want to find a way to fill in that gap and thus argue that Rivera's latest move does just that.

Unlike in *Ford*, however, no one formally intervened here. Rivera and his attorney have merely filed so much as is necessary to preserve a claim if in fact a claim-filing is legally necessary. Their uncertainty is understandable because the law is uncertain. *See Bradley*, 2008 WL 228064 at * 8-14 (extensive discussion of uncharted legal terrain built on subtle, unprecedented distinctions). *Ross's* reasoning

thus should be applied here. It cites the general rule that a party has consented to personal jurisdiction

> when the party took some kind of affirmative act ... *that fairly invited the court to resolve the dispute between the parties*. By contrast, where a party has filed a timely and unambiguous objection to the court's jurisdiction ... the party has not consented to jurisdiction ... even if the party has preserved its own options by simultaneously asserting whatever claims or defenses it has against the plaintiff.

*Ross*, 504 F.3d at 1149 (emphasis added). Rivera has not fairly invited this Court to do anything substantive. In fact, he insists that *another* court (the Florida state court referenced in *Bradley*) should continue to resolve the matter. This Court agrees, and denies the Receiver's claims-disposition motion (# 1110) to the extent she seeks to vary that result.

## IV. CONCLUSION

The Receiver's unopposed motion to confirm the sale of real property located at 4 Mall Court, Savannah, Georgia, doc. # 1128, is *GRANTED*. The Receiver's motion (doc. # 1110) for an Order of Approval is *GRANTED* in part and *DENIED* in part.

This  1  day of April, 2008.

/s/ B. Avant Edenfield
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA