**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CR 405-059 |
| | * | |
| MARTIN J. BRADLEY, III | * | |
| | * | |

**O R D E R**

Before the Court is Substitute Receiver William Schroeder's "Motion for Permission to Destroy All Documents and Records Pertaining to the Receivership." (Doc. 1585.) The Substitute Receiver seeks to destroy some 400 boxes of records related to the Receivership currently being stored during this case's nearly decade long post-trial proceedings. The records at issue consist primarily of documents created by the Substitute Receiver, the former Receiver Marta Alfonso, and the Monitor in this case (the "Receivership Records"). (Decl. of William Schroeder ("Schroder Decl."), Doc. 1626, ¶ 4.) While the Government does not oppose the motion (Doc. 1605), Defendant Martin J. Bradley, III ("Bradley") objects to the destruction of the Receivership Records contending some of these documents are his property (Docs. 1606, 1614, 1624).

## I. BACKGROUND

In 2006, Martin J. Bradley, III; Martin J. Bradley, Jr.; and Bio-Med Plus, Inc. were convicted of money laundering, wire fraud, and RICO violations. Thereafter, the parties agreed to a consent Forfeiture Order to satisfy Defendants' forfeiture obligations, and further agreed for the Court to appoint Marta Alfonso as Receiver to liquidate Defendants' non-exempt assets. (Docs. 598, 599.) On October 4, 2006, the Court expanded the Receiver's duties to include collection of monetary penalties. (Doc. 790.) In 2009, the Court removed Marta Alfonso as Receiver and designated William Schroeder as Substitute Receiver.[1] (Doc. 1241.) On June 29, 2011, the Eleventh Circuit reversed the Court's October 4th Order expanding the Receiver's duties and instructed that the Receivership should be ended as soon as practicable. (Doc. 1335, at 195.)

A few months later, the Substitute Receiver filed a "Motion for Approval of Substitute Receiver's Plan to Terminate Receivership and for Discharge of the Substitute Receiver." (Doc. 1323.) The Court heard from interested parties, including Bradley, and on February 9, 2012, granted in part and denied in part the Substitute Receiver's motion and ordered the Substitute Receiver to file a final accounting, a supplemental final accounting, and pay into the Court's Registry all remaining funds. (Doc. 1349, at

---

[1] Mr. Schroeder had previously served as Monitor over the Receivership.

8.) Relevant here is the Court's additional instruction for the Substitute Receiver to "retain all documents pertaining to the Receivership, including those of the former Receiver, until the Court orders otherwise." (Doc. 1349, at 8.) The Substitute Receiver complied with all these instructions (see, e.g., Docs. 1379, 1464, 1478) and on January 30, 2013, the Court discharged the Substitute Receiver, terminated the Receivership, and approved the final accounting, the final report, the final supplemental accounting, and the addendum to the final supplemental accounting. (Doc. 1485.)

The Court's January 30, 2013 Order also allowed payment of storage expenses to the Substitute Receiver to cover the costs of storing the Receivership Records for three years. Since October 2015, however, the Substitute Receiver has maintained the Receivership Records using his personal funds. Those costs totaled $13,915.68 at the time the motion was filed and the Substitute Receiver estimates the cost of the documents' destruction will be $5,000.00. (Doc. 1585, at 5.)

The Court's February 9, 2012 Order further instructed the Substitute Receiver to "turn over the documents, records, and electronic records of Bio-Med, and the computer software used to access these records to the Government." (Doc. 1349, at 4-5, 8.) Further, "[u]pon satisfaction of the forfeiture judgment, the Government **SHALL** turn these items over to those individuals

3

identified by the Bradleys." (Id. at 8.) The Court will refer to these records as the "Bio-Med Records."

On March 15, 2012, the Substitute Receiver delivered 556 boxes containing the Bio-Med Records to the Government. (Schroeder Decl., ¶ 4, Ex. A.) Two weeks later, the Government delivered the Bio-Med Records to Maria Bradley, wife of Defendant Martin Bradley III. (Id. ¶ 7, Ex. D.) In April 2013, the Substitute Receiver delivered to the Government "a server containing a complete electronic set of Bio-Med's accounting records that existed as of Marta Alfonso becoming Receiver **and** containing a complete set of Bio-Med accounting records that Marta Alfonso maintained as Receiver through to or about the date of the sale of the assets of Bio-Med, Inc. to Novis on April 9, 2007." (Id. ¶ 9 (emphasis in original).) Just as with the 556 boxes of documents, the server was delivered to Maria Bradley two weeks later. (Id. ¶ 9, Ex. F.) Thus, by April 2013, Bradley, through his wife, had received all Bio-Med Records, including the records related to the sale of Bio-Med's assets by the Receiver.

## II. DISCUSSION

The Substitute Receiver's motion argues that because more than five years have passed since the Receivership was terminated and the lengthy post-trial proceedings in this case have ended, he should be permitted to destroy the Receivership Records. Further,

4

the Substitute Receiver continues to incur considerable personal expense storing these records, despite there being little need for the records at this stage in the proceedings.

Bradley opposes this request contending many of the Receivership Records belong to him and should not be destroyed without his consent. While Bradley concedes the Substitute Receiver's work product documents may be destroyed, he claims the Substitute Receiver has shown no reason why Bradley's personal records, such as tax returns and correspondence with the IRS, should also be destroyed. It appears Bradley's primary motivation for seeking these records is to review how Marta Alfonso handled the liquidation of Bio-Med.[2] (See Aff. of Dana Braun ("Braun Aff."), Doc. 1620, at 1.) Bradley, however, has already received the entirety of the Bio-Med Records in accordance with the Court's February 9, 2012 Order. These records supplement the reports filed by Ms. Alfonso and Mr. Schroeder fully describing the actions taken during the Receivership. (See, e.g., Docs. 1015, 1033, 1039, 1052, 1059, 1085, 1089, 1098, 1132, 1134, 1150, 1166, 1167, 1173, 1200, 1201, 1202, 1204, 1218, 1231, 1238, 1250, 1253, 1262, 1274, 1281, 1288, 1294, 1308, 1317, 1346, 1382.) Further, Bradley has already filed and dismissed with prejudice a state court civil suit against Ms. Alfonso arising out of her handling of the Receivership.

---

[2] Dana Braun, attorney for the Substitute Receiver, discussed these issues with John Richter and Naana Frimpong, counsel for Bradley, who raised their client's concern over how Ms. Alfonso handled the liquidation of Bio-Med's assets.

5

(Braun Aff., Exs. C, D.) Thus, Bradley has little need for the Receivership Records to review Ms. Alfonso's actions regarding the liquidation of Bio-Med's assets.

The Court also finds Bradley waived his right to the Receivership Records for two reasons. First, in his 2017 Plea Agreement, Bradley expressly agreed to "waive any and all challenges on any grounds to the seizure, forfeiture, and disposal of any property connected to this case." (Doc. 1594, at 4.) Also, in June 2012, Bradley and the Government entered a settlement agreement in which Bradley agreed to relinquish all claims against the Government, the Substitute Receiver, and the Monitor in this case. (Doc. 1619-1, at 2.) Second, Bradley waited until the Substitute Receiver made the instant motion to raise his concerns over access to the Receivership Records. The record shows that Bradley's counsel received an index of all Receivership Records in June 2012, yet Bradley waited six years to raise this issue.

Finally, Bradley contends that the Receivership Records are relevant to possible future litigation, including a *coram nobis* petition related to the conviction against Bio-Med. The Court, however, is not aware of any *coram nobis* petition being filed and notes that more than two years have passed since Bradley's conviction on certain counts was vacated and more than seven years have passed since Defendant Martin Bradley Jr.'s conviction was vacated in part by the Eleventh Circuit.

## III. CONCLUSION

Simply stated, Bradley had ample time and opportunity to seek the Receivership Records and never did, he is already in possession of the Bio-Med Records, and he has waived his right to challenge the disposal of the Receivership Records. For all these reasons, the Court **GRANTS** the Substitute Receiver's "Motion for Permission to Destroy All Documents and Records Pertaining to the Receivership." (Doc. 1585.)

Finally, the Government has conferred with the Substitute Receiver and anticipates that the invoices for storage and destruction of the Receivership Records will be paid to the Substitute Receiver's satisfaction. Should a dispute arise, the Government and the Substitute Receiver may petition this Court to resolve any disagreements.

**ORDER ENTERED** at Augusta, Georgia, this 29th day of April, 2019.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA